1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 GILDARDO RAMIREZ-MORALES,           No. CIV S-04-2365-DFL-CMK-P

12                 Petitioner,

13        vs.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

14 DAVID L. RUNNELS,

15                 Respondent.

16 _____/

17            Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18 habeas corpus pursuant to 28 U.S.C. § 2254.   Pending before the court is petitioner's petition for

19 a writ of habeas corpus (Doc. 1), filed on October 18, 2004, respondent's answer (Doc. 12), filed

20 on June 22, 2005, and petitioner's reply (Doc. 16), filed on July 7, 2005.

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

# I. BACKGROUND

### A.   Facts[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> During the early morning hours of May 24, 2000, defendant, who had been drinking, got into an argument with his wife Olga. Olga told defendant to leave and he attempted to hit her, but was prevented from doing so by their 13-year-old son Alberto. After arguing further with Olga, defendant attempted to again strike her, and again was prevented from doing so by Alberto. Olga gathered defendant's clothes from the bedroom and put them in a bag. Defendant obtained a knife from the kitchen and attempted to stab Olga in the stomach; however, defendant ended up stabbing Alberto in the arm when the latter stepped in front of his mother. The knife penetrated both sides of Alberto's arm.
>
> Defendant made no further attempts at physical violence and left the home. He was arrested later the same morning by police at a bus bench.
>
> * * *

Defendant did not testify and presented no witnesses.

### B.   Procedural History

Following a jury trial, defendant was convicted of two counts of assault with a deadly weapon and one count of child endangerment. As to the assault counts, the jury found that petitioner inflicted great bodily injury. The jury also found true the allegation that petitioner had three prior convictions which are "strikes" under California sentencing law. Petitioner was sentenced to 64 years to life. Petitioner's conviction and sentence were affirmed on direct appeal in a reasoned opinion. The California Supreme Court denied direct review and also denied habeas corpus relief.

///

---

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

1    Under § 2254(d), federal habeas relief is available where the state court's decision

2  is "contrary to" or represents an "unreasonable application of" clearly established law.  In

3  Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the

4  Court), the United States Supreme Court explained these different standards.  A state court

5  decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the

6  Supreme Court on the same question of law, or if the state court decides the case differently than

7  the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

8  court decision is also "contrary to" established law if it applies a rule which contradicts the

9  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

10 that Supreme Court precedent requires a contrary outcome because the state court applied the

11 wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

12 Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

13 id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

14 determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

15 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

16 case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

17 is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

18   State court decisions are reviewed under the far more deferential "unreasonable

19 application of" standard where it identifies the correct legal rule from Supreme Court cases, but

20 unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

21 123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

22 suggested that federal habeas relief may be available under this standard where the state court

23 either unreasonably extends a legal principle to a new context where it should not apply, or

24 unreasonably refused to extend that principle to a new context where it should apply.  See

25 Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

26 decision is not an "unreasonable application of" controlling law simply because it is an

1   erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade,

2   123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot

3   necessarily be found even where the federal habeas court concludes that the state court decision

4   is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear

5   error fails to give proper deference to state courts by conflating error (even clear error) with

6   unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

7   law, where a state court decision is an "unreasonable application of" controlling law, federal

8   habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn,

9   283 F.3d at 1052 n.6.

10        The "unreasonable application of" standard also applies where the state court

11  denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

12  848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

13  are considered adjudications on the merits and are, therefore, entitled to deference under the

14  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

15  The federal habeas court assumes that the state court applied the correct law and analyzes

16  whether the state court's summary denial was based on an objectively unreasonable application

17  of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

18

19                              **III.  DISCUSSION**

20        In his petition, petitioner raises eight grounds for relief.  Petitioner claims:

21  (1) there was no evidence to establish that he stabbed his son; (2) the trial judge was not

22  impartial; (3) his prior conviction for attempted robbery was based on a plea that was not

23  knowing and voluntary; (4) his prior conviction for making terrorist threats was based on a plea

24  that was not knowing and voluntary; (5) ineffective assistance of trial counsel; (6) ineffective

25  assistance of appellate counsel; (7) the trial court erred in denying his motion to substitute

26  appointed counsel; and (8) Proposition 21, which made his prior convictions "strikes," is invalid

because it violates the California single-subject rule for initiative measures.

A.    **Sufficiency of the Evidence**

Petitioner argues that "no evidence proves that petitioner stabbed his son." Petitioner's argument, in its entirety, is as follows:

> Is true that Petitioner was calling his wife a whore. When Alberto Ramirez heard Petitioner saying to his mother whore, Petitioner and Alberto Ramirez wrestled and both of them went to the floor. Petitioner was trying to take the knife off from Alberto Ramirez, and on the wrestling, Alberto Ramirez cut himself in the arm. Ms. Melissa Masters affirmed that above. She testified that Alberto Ramirez and Petitioner were on the floor. (RT 147, 154-55). Ms. Master[s] indicated that Alberto jumped him. (RT 149). However, Alberto Ramirez testified that he was stabbed when he was hugging his mother to prevent her from being stabbed. (RT 15). Ms. Master[s] indicated on cross-examination that she did not see Petitioner grabbing a knife. (RT 159). Petitioner's right under the 14th Amend. have bee[n] violated.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

Petitioner's sufficiency of the evidence claim was raised in his state habeas petition, which was denied without comment. Because the state court denied the claim without providing any reasoning, this court will presume it applied the law summarized above and

review to determine whether the denial was based on an objectively unreasonable application of that law.  Here, the gravamen of petitioner's claim is that Ms. Masters' testimony does not support the prosecution theory that petitioner stabbed his son, as opposed to the stabbing being an accident.  A review of the trial transcript reveals that Ms. Masters offered the following relevant testimony concerning the incident:

> [Olga] and [petitioner] were fighting and the youngest one came and woke me up and they were in there fighting and everything, and then he tried to stab their mom.

> * * *

> Yeah.  The youngest son, Nico, Nicholas, he came and knocked on my door and then came – told me that they are fighting.

> * * *

> I went in there and they were trying to keep [petitioner] on the floor so he did – and Alberto was trying to keep him down so he couldn't hit his mom and he was saying something about Alberto not being his son or something like that.  And then they just started fighting and they went in the room, got his stuff together and told him to leave and he didn't do it. He grabbed the knife and tried to stab her.

> * * *

> Alberto kept putting him back down on the floor.

> * * *

> [Petitioner] got really mad and started yelling.  And then he grabbed the knife off the counter and he went to stab Alberto's mom.  And instead of stabbing her, Alberto got in the way and he stabbed Alberto.

> * * *

> [Petitioner] like went forward like a big step and thrust the knife out at [Olga].

> * * *

> [Alberto] was standing like directly beside her by the wall.  And when he seen what his father was doing, he jumped in front of [Olga].

/ / /

/ / /

Contrary to petitioner's assertion, this testimony is completely consistent with the prosecution's theory of the case – that petitioner attempted to stab Olga but Alberto got in the way and was stabbed through the arm.  Ms. Masters' testimony that petitioner and Alberto were on the floor is not inconsistent with this theory.  Petitioner seems to assert that Alberto had the knife and then the two went to the floor in a wrestling match over the knife.  While Ms. Masters did testify that petitioner and Alberto were on the floor, she made it clear that this was before petitioner grabbed the knife.  As to petitioner's assertion that Ms. Masters testified that Alberto jumped him, this was not her testimony.  Rather, she testified that Alberto "jumped in front of [Olga]."  Again, this is not inconsistent with the prosecution theory of the case.

Clearly, to the extent there were any conflicts in the testimony, the jury resolved those conflicts against petitioner and in favor of the prosecution.  It is not for this court to second-guess the jury's factual determinations.  Instead, this court reviews to determine whether a reasonable jury could have reached the conclusion that the jury in petitioner's case reached, given the same evidence.  In light of the entire record, the court finds that a reasonable jury could have reached the same conclusion – that petitioner attempted to stab Olga but instead stabbed Alberto through the arm when he jumped in front of his mother.  This conclusion is consistent with Ms. Masters' testimony as well as the testimony of the other witnesses, particularly Alberto.

**B.** **Trial Judge Bias**

Petitioner claims:

The trial judge stated: "Let me take a look at the terrorist threats." "As it turns out, I was the judge on the terrorist threat case.  On the terrorist threat case, I asked you what is your plead to a felony violation of 422 of the Penal Code, terrorist threats, Count 1.  Then I asked you what your plea was to Count 2, a felony violation of terrorist threats.  So it was very clear at that time, that that [sic] was two felonies right there.  And that was in – what was that?  1997.  So that was two serious strikes right there." (RT 50).  Petitioner claimed that the judge did not strike any prior conviction because he was biased against him.  Petitioner's conviction violated the 6th Amendment to the United States Constitution.  Also Petitioner's trial counsel was ineffective because Petitioner told trial

///

8

1    counsel to move to exclude the judge from the case.[2]

2    This claim was raised in petitioner's state habeas petition, which was denied on the merits

3    without comment or citation.  Therefore, as with petitioner's sufficiency of the evidence claim,

4    this court assumes the state court applied the correct federal law and will review to determine

5    whether the decision resulted in an objectively unreasonable application of that law.

6    Due process requires a fair trial before a fair judge.  See Withrow v. Larkin, 421

7    U.S. 35, 46 (1975).  To prevail on a claim of judicial bias, the petitioner must overcome a

8    presumption of honesty and integrity and demonstrate an actual bias against the defendant or an

9    interest in the outcome of the case.  See id. at 47.  Under this standard, a judge's ruling alone

10   does not show bias or an interest in the outcome.  See Poland v. Stewart, 117 F.3d 1094, 1103

11   (9th Cir. 1997).

12   Petitioner appears to conclude judicial bias from the fact that the trial judge

13   presided over one of petitioner's priors.  Petitioner states that the trial judge refused to strike the

14   terrorist threat prior due to his connection with the prior case and that this demonstrates bias.

15   The court disagrees.  The state court record reflects that the trial court properly considered

16   petitioner's motion to strike the terrorist threat prior conviction.  Specifically, the judge noted:

17   (1) arguments submitted by counsel; (2) the probation report; (3) doctors' reports and the history

18   of petitioner's organic brain problems; (4) petitioner's minimal remorse; and (5) the terrorist

19   threat prior involved a knife and a threat to kill the same victim.  Moreover, petitioner has failed

20   to point to any evidence that the trial judge was personally biased against him or had an interest

21   in the outcome of the case.  Contrary to petitioner's assertion, the record does not support the

22   conclusion that the trial judge denied the motion to strike on the basis of his having presided

23   over the prior case.  Without more, the trial judge's denial of petitioner's motion to strike, does

24   not reflect actual bias.  See id.

25

26   [2]    The ineffective assistance counsel aspect of this claim is discussed below in section III.D.

### C.  <u>Prior Convictions</u>

The jury found true the allegations that petitioner had several prior convictions which counted as "strikes" under California sentencing law.  In particular, the jury found that petitioner had been convicted in 1992 of attempted robbery and in 1997 of making terrorist threats.  Both convictions resulted from guilty pleas.  Petitioner argues in claims 3 and 4 that these convictions are invalid because the pleas were not knowing and voluntary.  As to the 1992 conviction, petitioner contends that he was found to be under the influence of alcohol at the time of the incident and that he does "not remember anything from the offense."  As to the 1997 conviction, petitioner asserts that he has an organic brain problem that made it "difficult for him to enter a plea bargain."

Petitioner is attempting to use the instant federal habeas proceeding – which challenges the current conviction – to challenge the 1992 and 1997 convictions.  As respondent correctly observes, however, once a state conviction is no longer open to direct or collateral attack in its own right, the petitioner may not challenge a subsequent sentencing enhancement based on those convictions on the ground that the prior convictions were unconstitutionally obtained.  <u>See</u> <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394, 403-04 (2001); <u>Daniels v. United States</u>, 532 U.S. 374 (2001).  To allow such a challenge would undermine the policy consideration of finality of the prior convictions.  <u>See</u> <u>id.</u>  An exception to this rule – inapplicable here – exists where the petitioner was not afforded counsel in the prior proceedings.  <u>See</u> <u>id.</u>  Because the 1992 and1997 prior convictions are no longer open to direct or collateral review, petitioner cannot challenge them in this case.

### D.  <u>Ineffective Assistance of Counsel</u>

Petitioner asserts that his trial counsel was ineffective for: (1) failing to seek the recusal of the trial judge; and (2) failing to present the defense that the stabbing was an accident.  Petitioner also argues that his appellate counsel was ineffective for failing to raise these two issues on direct appeal.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The Strickland standards also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel,

as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 463

U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  <u>Id.</u>

Otherwise, the ability of counsel to present the client's case in accord with counsel's professional

evaluation would be "seriously undermined."  <u>Id.; see also</u> <u>Smith v. Stewart</u>, 140 F.3d 1263, 1274

n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary,

and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation

to raise meritless arguments on a client's behalf.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88.  Thus,

counsel is not deficient for failing to raise a weak issue.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  In order to

demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors,

he probably would have prevailed on appeal.  <u>See id.</u> at n.9.

Without reaching the question of counsel's performance, all of petitioner's

ineffective assistance of counsel claims lack merit because he cannot establish prejudice.  As to

his claim that trial counsel was ineffective for failing to seek the recusal of the trial judge based

on bias, as discussed above, the record does not support petitioner's contention of actual bias.

Certainly, the trial court's denial of petitioner's motion to strike alone does not establish bias.

Therefore, even had counsel moved to disqualify the trial judge, the motion would have been

properly denied.  Therefore, petitioner cannot demonstrate prejudice.

Similarly, as to petitioner's claim that trial counsel was ineffective for failing to

argue at trial that the stabbing of Alberto was an accident, petitioner cannot show prejudice.

Petitioner's version of events is that Alberto had the knife first and that he wrestled Alberto to the

floor in order to take the knife away.  Petitioner asserts that Alberto was accidently stabbed while

the two were wrestling for the knife.  As discussed above, the evidence simply does not support

this version of events.   All the witnesses consistently testified that it was petitioner who first had

the knife in hand, that he then moved toward Olga with the knife, and that Alberto jumped in the

way to protect his mother and was stabbed in the arm.  While Alberto's stabbing was "accidental"

in the sense that petitioner was attempting to stab Olga but Alberto got in the way, it was not the

result of the "accident" described by petitioner.  Therefore, the result would not have been any different even if counsel had raised petitioner's accident argument.

Finally, as to petitioner's claim that appellate counsel was ineffective for failing to raise the bias and accident arguments on direct appeal, petitioner cannot show prejudice.  For the reasons discussed above, this court cannot say that petitioner would have prevailed on appeal had these issued been raised.

### E.   Motion to Substitute Appointed Counsel

Petitioner claims that the trial court erred by denying his motion for substitution of counsel pursuant to People v. Marsden, 2 Cal.3d 118 (1970).  Specifically, petitioner claims that he was denied effective representation because of a conflict with counsel.   "A State has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal." Hendricks v. Zenon, 993 F.2d 664, 669 (9th Cir. 1993) (citing Douglas v. California, 372 U.S. 353, 358 (1963)).   In California, a criminal defendant who is dissatisfied with court-appointed counsel must be permitted to state the reasons why the defendant believes the attorney should be replaced.  See Marsden, 2 Cal. 3d at 123-24.  When a defendant seeks to discharge counsel and substitute another attorney on the ground of inadequate representation, the court is required to allow the defendant to explain the basis for the motion and relate specific instances of the attorney's deficient performance.  See id.   Denial of a Marsden motion can only amount to a constitutional violation where there was a conflict between the defendant and counsel which prevented effective representation.  See Schell v. Witek, 218 F.3d 1017, 1026 (9th cir. 2000) (en banc).

In addressing this claim on direct appeal, the state court first recited the factual background as revealed at Marsden hearings held in the state court.  At petitioner's first hearing, he complained that trial counsel had presented him with a plea offer which petitioner felt was "too much time for the crime" that he committed.  At this point, petitioner was facing up to 27 years based on the complaint which only alleged one prior.  Petitioner was offered 10 years in exchange

for his guilty plea.  At the second <u>Marsden</u> hearing, petitioner testified that he remained unhappy with appointed counsel because he continued to present him with the same offer.  By this time in the proceedings, the government was alleging three strikes which meant that petitioner faced a potential sentence longer than 27 years.  At the third <u>Marsden</u> hearing, petitioner stated that counsel continued to press him to accept the plea bargain and that counsel was upset that he refused.  At a fourth hearing, petitioner claimed that appointed counsel would use a "very threatening tone" and would laugh at him and mock him.

The state court addressed the merits of the claim and stated:

> Defendant argues that "[b]y the time of the fourth [<u>Marsden</u>] motion, the undisputed record showed that there was an irreconcilable breakdown in communications."  While this may be true, the record also indisputably shows that any such breakdown was occasioned by defendant's utterly unreasonable refusal to listen to counsel and the court.  Indeed, the record shows extreme patience by both counsel and the court in listening to defendant's repetitive and meritless complaints during his several <u>Marsden</u> motions.  Simply put, the record shows that because defendant did not like the People's offer, he was blaming the messenger, namely, counsel.  Since any breakdown in communications was solely the fault of defendant, the denial of all of his <u>Marsden</u> motions was proper.

The court then distinguished petitioner's case from <u>Schell</u>, where the defendant's trial counsel stated that she would not waste funds on a fingerprint expert and that the defendant should accept a plea deal.  In <u>Schell</u>, the Ninth Circuit observed that, "[i]f true, this explanation may have been tantamount to [counsel] telling [the defendant] that she would neither investigate nor defend him unless he pleaded guilty."  <u>See</u> <u>Schell</u>, 218 F.3d at 1027.  The state court distinguished <u>Schell</u> as follows:

> . . . The record of [defendant's] <u>Marsden</u> hearings shows that defendant's dissatisfaction with his counsel was based on the People's offer which counsel was conveying as well as a defense of intoxication which defendant believed, and erroneously so, was available to him.  Defendant was urged to take the plea by counsel, and impliedly by the judges who heard his <u>Marsden</u> motions, because he was facing life in prison in a case where counsel rightfully concluded, as shown by the trial evidence that the case against him was overwhelming.  Indeed, counsel pointed out that he had gone over the law and the medical records with defendant.  On this record, counsel's alleged threatening tone or mockery was undoubtedly based upon counsel's exasperation with not being able to get defendant to

14

1    understand that he had no defense and that the offer was his only chance to
     escape a life sentence.  Consequently, any threatening tone or mockery
2    could not reasonably be interpreted as a threat to not represent defendant
     should he refuse the offer.
3

4            Because the state court applied the correct law, this court will review under the

5    "unreasonable application of" standard.  Under this standard, the court cannot say that the state

6    court's decision was an unreasonable application of federal law.  To prevail, petitioner must show

7    that the breakdown with appointed counsel deprived him of effective representation.  As the state

8    court observed, counsel's conduct in advising petitioner concerning the plea bargain and the

9    unavailability of an intoxication defense was the essence of effective representation.  This court

10   agrees with the state court when it says that "defendant cannot . . . be the cause of a breakdown in

11   the attorney-client relationship, as he is here, and then on appeal cite the breakdown as a reason

12   for reversal."

13           F.     **Proposition 21**

14           Petitioner contends that his strikes for making terrorist threats must be stricken

15   because Proposition 21, which added the crime of making a criminal threat to the list of serious

16   felonies which count as strikes, is a violation of California's single-subject rule for initiative

17   measures.  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

18   transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

19   1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available

20   for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see

21   also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378,

22   1381 (9th Cir. 1986).  Here, petitioner's challenge to Proposition 21 is purely a matter of state law

23   which has been conclusively resolved against petitioner by the California Supreme Court in

24   Manduley v. Superior Court, 27 Cal.4th 537 (2002).  Therefore, federal habeas relief is not

25   available on petitioner's Proposition 21 claim.

26   / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that the Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 4, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE